Robert A. Mandel (SBN 022936)
Taylor C. Young (SBN 020743)
Mandel Young plc
3001 E. Camelback Rd., Ste. 130
Phoenix, Arizona 85016
rob@mandelyoung.com
taylor@mandelyoung.com
T. (602) 424-8480
F. (602) 734-5431
*Attorneys for Plaintiff/Creditor*
   *Western State Bank*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>Nathan M. Brooks,<br><br>    Debtor.<br><br>―――――――――――――――――<br><br>Western State Bank,<br><br>    Plaintiff/Creditor,<br><br>v.<br><br>Nathan M. Brooks and Maya Brooks,<br><br>    Defendants/Debtor. | Case No. 14-09213<br>(Chapter 7)<br><br>Adv. No. _____ |

**COMPLAINT OF WESTERN STATE BANK TO DETERMINE NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523**

Plaintiff/Creditor Western State Bank ("Plaintiff"), for its Complaint pursuant to 11 U.S.C. § 523(a)(2) against Defendant/Debtor Nathan M. Brooks ("Debtor") and Defendant Maya Brooks ("Spouse"), alleges:

**NATURE OF THE CASE**

1. This is an adversary proceeding to determine the nondischargeability of a debt pursuant to 11 U.S.C. § 532(a)(2) of the Bankruptcy Code and Rule 4007(c) of the Rules of Bankruptcy Procedure. Plaintiff also seeks a final judgment in its favor and against Debtor and Spouse, jointly and severally, in the amount of the debt, together with interest, expenses, and reasonable attorney's fees.

**PARTIES**

2. Plaintiff is a state-chartered financial institution headquartered in the State of North Dakota with branch offices located throughout the Phoenix, Arizona metropolitan area and elsewhere.

3. On information and belief, Debtor is a physician specializing in family and urgent care medicine who resides in Queen Creek, Arizona.

4. On information and belief, Debtor and Spouse are and were married at all times material to this Complaint.

5. On information and belief, Debtor and Spouse are separated and Spouse resides in Queen Creek, Arizona.

6. Debtor is the subject of a voluntary petition (the "Petition") for bankruptcy relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## FACTS

10. San Tan Urgent Health Care Center, LLC ("San Tan Urgent Care") is an Arizona limited liability company that conducted business as an urgent care medical services facility located in Queen Creek, Arizona until its recent cessation of business (the "Queen Creek facility").

11. Debtor was the managing member of San Tan Urgent Care.

12. Together with Spouse, Debtor owned and, on information and belief, continues to own all membership interests in the business entity.

13. Debtor worked as a physician at the Queen Creek facility until its recent cessation of business.

14. Prior to February 2012, Debtor decided to expand San Tan Urgent Care's business operations by opening a second medical services facility in Arizona (the "Thatcher facility").

15. In or about early February 2012, Debtor and Spouse (collectively, the "Brooks") filled out Plaintiff's standard loan application (the "Loan Application") for the purpose of obtaining a loan in the amount of $175,000 for San Tan Urgent Care's expansion.

16. When applying for the loan, Debtor represented to Plaintiff that he intended to use the loan proceeds to complete tenant improvements and to acquire certain medical equipment necessary for the operation of the Thatcher facility.

17. The Loan Application called for Debtor and Spouse to disclose, among other things, all assets and liabilities, as well as any and all encumbrances, so that Plaintiff could appropriately evaluate both San Tan Urgent Care's qualifications for the requested loan and Debtor's and Spouse's qualifications to serve as guarantors of San Tan Urgent Care's debt.

18. In the Loan Application, Debtor and Spouse purported to set forth, among other things, both the value of their membership interests in San Tan Urgent Care, which they represented was $5.5 million in the aggregate, and the value of the real property on which the Queen Creek facility was situated, which they represented was $2 million with a remaining balance of $1.2 million on the mortgage.

19. Also in the Loan Application, Debtor and Spouse purported to set forth, among other things, aggregate liabilities for San Tan Urgent Care of $1,650,000.

20. Unbeknownst to Plaintiff, the Brooks' representations regarding the value of their membership interests in San Tan Urgent Care as of February 6, 2012 were false, fabricated, and deceptive.

21. Also unbeknownst to Plaintiff, the Brooks' representations regarding the amount of aggregate liabilities were false, fabricated, and deceptive.

22. In representing to Plaintiff that the value of their membership interests in San Tan Urgent Care was $5.5 million and that the value of the real property on which the Queen Creek

facility sat was $2 million, Debtor and Spouse effectively represented that San Tan Urgent Care was worth approximately $7.5 million.

23. Debtor and Spouse failed to disclose in the Loan Application, however, that the $5.5 million value they attributed to their membership interests in San Tan Urgent Care was inclusive, on information and belief, of the $2 million value they attributed to the real property on which the Queen Creek facility was situated.

24. Even if Debtor and Spouse had excluded the value of the real property from the $5.5 million value attributed to their membership interests, the difference—$3.5 million—could not have accurately reflected the value of those membership interests.

25. Among other things, Debtor and Spouse failed to disclose in the Loan Application that San Tan Urgent Care's aggregate liabilities actually exceeded $2.1 million, as they would later inform the IRS.

26. When Debtor filed the underlying bankruptcy proceeding, Debtor represented to this Court and his creditors that the membership interests in San Tan Urgent Care were worthless—that is, that they somehow plummeted from $5.5 million in value to zero dollars in value in fewer than two and half years.

27. The Brooks also represented on the Loan Application that their ownership in certain real property—specifically, Lot 80 at The Pecans of Queen Creek ("Lot 80")—was free and clear of any liens or other encumbrances as of the date of the Loan Application.

28. Unbeknownst to Plaintiff, the foregoing representation was false, fabricated and deceptive, as Lot 80 was encumbered.

29. In addition to their failure to disclose the existence of a lien on Lot 80, the Brooks, on information and belief, failed to disclose their ownership of several vehicles in addition to those identified on the Loan Application.

30. The Brooks signed the Loan Application on February 6, 2012, certifying that:

> [T]he information provided in this statement is true, correct and complete. So long as I owe any sums to the bank or remain as a guarantor, endorser, or co-maker on any other obligation with the bank, I agree to give the bank prompt written notice of any change in my name, address, employment, a material change in my financial condition or any information included in this statement, and upon request, I agree to provide the bank with an updated personal financial statement. The bank is authorized to retain this personal financial statement whether or not credit is approved and is further authorized to verify my credit history, to include periodic credit bureau reports, and employment history or any other information in this statement. I understand this application does not obligate the bank to make any loan even if I meet the normal standards the bank considers in determining whether to approve or deny the application.

31. The Brooks' certification was false, fabricated, and deceptive, as the Loan Application was riddled with untrue representations and omissions of facts regarding San Tan Urgent Care's and the Brooks' assets and liabilities.

32. The Brooks knew that the Loan Application contained false, fabricated, and deceptive information when they filed it.

33. In reliance upon the Brooks' material financial misrepresentations and omissions on the Loan Application, Plaintiff approved the loan.

34. To consummate the transaction, the Brooks, acting on behalf of San Tan Urgent Care, entered into that certain Business Loan Agreement (the "Loan Agreement"), Resolution,

Commercial Security Agreement and Commercial Promissory Note (the "Note") with Plaintiff on March 12, 2012.

35. Under the loan documents, Plaintiff agreed to lend, San Tan Urgent Care agreed to borrow, and Debtor and Spouse agreed to guarantee the repayment of not less than $175,000, such principal to be repaid in 119 consecutive payments, together with interest at a rate of 5.25 percent or a higher interest rate in the event of default, and with a final balloon payment due on the maturity date.

36. Under the Loan Agreement, Debtor and Spouse represented to Plaintiff:

> **Financial Information and Filing.** All Financial Statements provided to Lender have been prepared and will continue to be prepared in accordance with generally accepted accounting principles, consistently applied, and fully and fairly present the financial condition of Obligors, and there has been no material adverse change in Obligors' business, Property, or condition, either financial or otherwise, since the date of Obligors' latest Financial Statements. Obligors have filed all federal, state, and local tax returns and other reports and filings required by law to be filed before the date of this Agreement and have paid all taxes, assessments, and other charges that are due and payable prior to the date of this Agreement. Obligors have made reasonable provision for these types of payments that are accrued but not yet payable. Borrower does not know of any deficiency or additional assessment not disclosed in Borrower's books and records.

37. Debtor and Spouse further agreed that "all representations and warranties in this Agreement and the Loan Documents are true and correct and no material fact has been omitted."

38. The aforementioned representations and warranties by Debtor and Spouse in the Loan Agreement were false, fabricated, and deceptive.

39. Debtor and his spouse each signed the Loan Agreement as guarantors, acknowledging, consenting and certifying as follows:

> Guarantor (i) acknowledges reading and understanding this Agreement, (ii) consents to the provisions of this Agreement relating to Borrower; (iii) agrees to furnish the Financial Statements to Lender that Lender reasonably requests; (iv) agrees to those portions of this Agreement that apply to Guarantor; (v) acknowledges that this Agreement has been freely executed without duress and after an opportunity to consult with counsel; and (vi) confirms that Guarantor received a copy of this Agreement, the Guaranty, and the other documents Guarantor requested.

40. Debtor and Spouse also signed Plaintiff's separate form of guaranty on March 12, 2012—titled Unlimited Continuing Payment Guaranty (the "Guaranty")— wherein Debtor and Spouse each assumed personal financial responsibility for the full and prompt satisfaction of San Tan Urgent Care's debt if it should fail to fulfill its repayment obligations under the Loan Agreement and Promissory Note.

41. Debtor and Spouse, as members of San Tan Urgent Care, also signed a Commercial Promissory Note in which they acknowledged the "[Promissory] Note shall be the joint and several obligations of all makers, sureties, guarantors and endorser, and shall be binding upon them and their successors and assigns."

42. Plaintiff thereafter remitted the loan proceeds to San Tan Urgent Care.

43. In the Loan Application, Debtor and Spouse agreed to provide Plaintiff with "prompt written notice of any change in [their] financial condition or any information included in [the Application]."

44. Under the Loan Agreement, Debtor and Spouse also agreed to provide "an annual Personal Financial Statement including all contingent liabilities and an annual Tax Return including all K-1 Schedules."

45. Under the Guaranty, Debtor and Spouse also agreed to keep Plaintiff "adequately informed . . . of any facts, events or circumstances which might in any way affect Guarantor's risks" under the loan documents.

46. Despite the aforementioned disclosure obligations, Debtor and Spouse failed to inform Plaintiff that they and San Tan Urgent Care were experiencing financial difficulties.

47. Plaintiff first learned of Debtor's, Spouse's, and San Tan Urgent Care's alleged financial difficulties when Plaintiff received a May 21, 2014 Notice of Trustee's Sale relating to the real property on which the Queen Creek facility was situated.

48. In accordance with the loan covenants, Plaintiff periodically requested that Debtor and Spouse provide updated financial information, including current personal financial statements, together with the internally-prepared balance sheets, income statements and quarterly financial statements of San Tan Urgent Care.

49. Despite the aforementioned requests, Debtor submitted only an incomplete and essentially useless Personal Financial Statement to Plaintiff in 2013 and otherwise withheld the aforementioned contractually-required updated financial information from Plaintiff, and Spouse submitted nothing at all.

50. San Tan Urgent Care defaulted on the loan on June 24, 2014.

51. Following the default, the outstanding balance on the loan was $119,109.70.

52. San Tan Urgent Care's default on the loan activated Debtor's and Spouses payment obligations as guarantors under the Guaranty, Loan Agreement, and Note.

53. Debtor and Spouse defaulted on their payment obligations as guarantors, however, when they failed to satisfy San Tan Urgent Care's payment obligations to Plaintiff under the loan documents.

54. Plaintiff has been damaged by Debtor's and Spouse's materially false representations and omissions of material facts in the Loan Application and thereafter.

## **COUNT I**

**(Fraud – Nondischargeability Pursuant to 11 U.S.C. § 523(a)(2))**

55. Plaintiff repeats and incorporates the allegations of paragraphs 1 through 51 of the Complaint into this Count by reference as fully set forth herein.

56. In order to induce Plaintiff to approve the Loan Application and enter into both the Loan Agreement and Note with San Tan Urgent Care and the guaranties with Debtor and Spouse, Debtor and Spouse made the aforementioned materially false representations and omissions to Plaintiff, including but not limited to representations regarding the magnitude of their assets and liabilities.

57. When Debtor and Spouse made these materially false representations and omissions to Plaintiff, Debtor and Spouse knew them to be false.

58. When Debtor and Spouse made these materially false representations and omissions to Plaintiff, Debtor and Spouse intended to deceive Plaintiff.

59. Plaintiff reasonably relied on Debtor's and Spouse's materially false representations and omissions when it approved the loan and guarantees.

60. Plaintiff justifiably relied on Debtor's and Spouse's representations and omissions when it proceeded to approve the Loan Application.

61. Plaintiff further reasonably relied on Debtor's and Spouse's materially false representations, including those by omission, when Debtor and Spouse failed to update personal financial information or disclose allegedly impending business and personal financial hardship as required by the loan covenants.

62. Debtor's and Spouses intentional and materially false statements and omissions to Plaintiff, both oral and written, regarding San Tan Urgent Care's and their own financial condition comprise false pretenses, a false representation, or actual fraud, for the purpose of obtaining a loan.

63. Plaintiff was injured as a direct and proximate result of Debtor's and Spouse's materially false representations and omissions.

64. Debtor and Spouse are jointly and severally liable to Plaintiff for all unpaid sums under the loan documents, including unpaid principal, interest (including default interest), expenses, and any penalties.

65. The debt owed is non-dischargeable pursuant to section 523(a)(2) of the Bankruptcy Code.

66. Plaintiff also is entitled to an award of its reasonable attorney's fees and costs pursuant to the express terms of the Guaranty, which provides in pertinent part:

> Guarantor hereby agrees, to the extent permitted by law, to pay any and all expenses incurred in enforcing any rights under this Guaranty. Without limiting the foregoing, Guarantor agrees that whenever any attorney is used by the Lender to obtain payment

hereunder, to enforce this Guaranty, to adjudicate the rights of the parties hereunder, or to advise the Lender of its rights, the Lender shall be entitled to recover reasonable attorneys' fees, all court costs, and expenses attributable thereto.

Plaintiff also requests attorneys' fees and costs pursuant to §§ 12-341 and 12-341.01 of the Arizona Revised Statutes.

64. Plaintiff also is entitled to an award of its expenses pursuant to the express terms of the Loan Agreement, which provides in pertinent part: "Obligors also agree to pay all reasonable costs and expenses of Lender in connection with the enforcement of Lender's rights and remedies under this Agreement, the Related Documents, and any other agreement between one or more Obligors and Lender, . . . including reasonable attorney's fees."

WHEREFORE, Plaintiff requests the entry of an order and final judgment against Debtor and Spouse and in favor of Plaintiff (i) declaring that the remaining debt in the amount of $119,109.70, together with interest, penalties and reasonable attorneys' fees and costs, is nondischargeable, (ii) entering final judgment against Debtor and Spouse, jointly and severally, for the foregoing sums, (iii) and for such other and further relief as this Court deems proper.

**RESPECTFULLY SUBMITTED** this 22nd day of September, 2014.

**MANDEL YOUNG PLC**

By: /s/ Robert A. Mandel
 Robert A. Mandel
 3001 E. Camelback Rd., Ste. 130
 Phoenix, Arizona 85016
 T. (602) 424-8480
 F. (602) 734-5431
 *Attorneys for Plaintiff/Creditor*

## CERTIFICATE OF SERVICE

Robert A. Mandel hereby gives notice that the foregoing Complaint of Western State Bank to Determine Nondischargeability of Debt Pursuant to 11 U.S.C. § 523 was electronically filed this 22nd day of September, 2014 using the CM/ECF electronic filing system.

By: /s/ Robert A. Mandel
Robert A. Mandel